JOSEPH J. FARR ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF MANCHESTER ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued February 6—decided March 17, 1953

*Paul B. Groobert,* for the appellant (defendant Wiganowske).

*John R. Mrosek,* with whom was *Harold W. Garrity,* for the appellees (plaintiffs).

BROWN, C. J. This proceeding began as an appeal from the zoning board of appeals of the town of Manchester. The trial court rendered judgment for the plaintiffs sustaining the appeal. The defendants, the petitioner and the board, have appealed to this court. The question involves the board's right to grant a variance.

So far as is necessary for the decision of this appeal, the facts found by the court, which are not subject to correction, are thus summarized: Article 4, § 8, of the Manchester zoning regulations forbade the use for the sale of alcoholic liquors of any building located within 1000 feet of any other premises where alcoholic liquors were sold. Article 5, § 5 (4), empowered the board of appeals to "[a]uthorize on appeal, variances from the strict application of the provisions of these regulations to a specific lot or piece of property where, by reason of exceptional shape, exceptional topography or other exceptional situation or conditions, unusual difficulty or unreasonable hardship would result to the owners of said property; provided that relief can be granted with-

out impairment of the integrity of these regulations and without substantial detriment to the public welfare. Before any variance is granted, it shall be shown that special circumstances attach to the property which do not generally apply to other property in the same neighborhood." Subsection 6 further provided that all determinations of the board should be in accord with the comprehensive plan set forth in the regulations and that no permit for special exceptions should be granted unless the board found that the proposed use would not give rise to a traffic hazard, interfere with the pattern of highway circulation, or tend to depreciate the value of property in the neighborhood or its residences.

On June 5, 1951, the petitioner, the defendant Wiganowske, hereinafter referred to as the defendant, took title to a package store at 35 Oak Street. He applied to the defendant board for permission to transfer the store to a building at 219 Spruce Street which he and his wife owned. Oak Street runs at right angles to Spruce Street and the two places are approximately two blocks apart. Each is in a business zone wherein the use of buildings for the sale of alcoholic liquors may be permitted. There are numerous liquor outlets within 1000 feet of 219 Spruce Street. The same is true of 35 Oak Street. In his application to the board for the transfer, the defendant asked for a variation of the 1000-foot restriction applying to 219 Spruce Street, stating as his reason that he and his wife owned the property, which had "an empty store," and further that "there is no parking problem in front of this property."

On July 16, 1951, the board granted the defendant's application for the transfer of the 35 Oak Street package store "to location within 1000 feet of another liquor outlet at 219 Spruce Street," provided

the board was furnished with papers establishing that the former premises would remain vacant for a period of thirty days. The defendant complied with this condition. On September 10, 1951, after the plaintiffs had appealed to the Court of Common Pleas, the board voted to amend its record of the above meeting by adding: "Reasons for granting: There will be no increase in the number of liquor outlets, it being merely a transfer from one location to another. (2) There is considerable hardship involved by reason of the applicant's ownership of the proposed location and inability to use same for any profitable enterprise. (3) There is a physical hardship alleged by the applicant by reason of a health condition."

The store at 219 Spruce Street has an area twelve by seventeen and one-half feet and is one part of an original store which the defendant divided into two. Three steps lead into it from the sidewalk. It is similar to stores in many other business buildings in the immediate vicinity. In spite of the defendant's efforts to rent this store, it has been vacant for approximately 75 per cent of the time since 1940. The 35 Oak Street property is nearer the business center of Manchester and has more liquor outlets within a radius of 1000 feet than 219 Spruce Street has. Traffic and parking conditions are more congested in the vicinity of the former location than in that of the latter. The plaintiffs, who are owners of nearby homes as well as competitors of the defendant, are residents, taxpayers and electors of Manchester.

The gist of the court's subordinate conclusions supporting its ultimate conclusion is: (1) There was no evidence of unusual difficulty or unreasonable hardship within the terms of article 5, § 5 (4).

(2) The plaintiffs' residential property would be adversely affected by the variance. (3) The plaintiffs as landowners, taxpayers and electors are aggrieved and entitled to appeal. (4) Financial hardship does not justify the granting of a variance under the zoning regulations. The court's ultimate and controlling conclusion is that the board acted arbitrarily and illegally and abused the discretion reposed in it.

The brief of the defendant states that the first of the two issues on this appeal is whether the court erred in concluding that the plaintiffs are aggrieved within the meaning of § 160b of the 1951 Cumulative Supplement to the General Statutes and so are entitled to appeal. He urges that in admitting the testimony of the plaintiffs that they are Manchester taxpayers, landowners and electors the court violated the best evidence rule and so committed error. It is further claimed that this leaves the finding of these facts unsupported and that it must be stricken out. The defendant's claim overlooks the distinction which exists in a case involving ownership of land between the proof which is essential where the question of title is directly in issue and that which is essential where it is only collaterally involved. The best evidence rule "applies when the issue of title or ownership is directly involved, and not when it is collaterally involved, in which case a prima facie right of ownership may be established by parol evidence from one qualified to speak." *Mathews* v. *Livingston*, 86 Conn. 263, 273, 85 A. 529; see 4 Wigmore, Evidence (3d Ed.) § 1246. As Wigmore points out, ordinarily "where the terms of a document are not in actual dispute, it is inconvenient and pedantic to insist on the production of the instrument itself." 4 Wigmore, op. cit., p. 482. Furthermore, as was observed in the *Mathews* case, if testimony as to

ownership upon a collateral issue is disputed it can easily be contested. This the defendant made no attempt to do. The question of title was only collaterally involved in the present case, because the decision of the case would not conclusively determine whether the plaintiffs were the owners of the properties concerning which they testified. Abundant authority supports the court's ruling in allowing the testimony to prove ownership. *Shanks* v. *Robertson,* 101 Kan. 463, 464, 168 P. 316; *State ex rel. Walton* v. *Superior Court,* 18 Wash. 2d 810, 822, 140 P.2d 554; *In re Mingo Drainage District,* 267 Mo. 268, 281, 183 S.W. 611; *Littlefield* v. *Bowen,* 90 Wash. 286, 291, 155 P. 1053; 20 Am. Jur. 368, § 408, and see p. 258; note, 1 A.L.R. 1143; 4 Wigmore, op. cit., § 1254 and n.1. For like reasons the court properly admitted the testimony of the plaintiffs that they were also taxpayers and electors. The defendant further contends that, even though the plaintiffs were landowners, taxpayers and electors in the town, since they were competitors they could not be parties "aggrieved" within § 160b. If the sole basis of their alleged grievance was that they were competitors of the defendant, they would not qualify as aggrieved persons. *Benson* v. *Zoning Board of Appeals,* 129 Conn. 280, 284, 27 A.2d 389. They do come within the statute as owners of residential property in the vicinity. *Kamerman* v. *LeRoy,* 133 Conn. 232, 237, 50 A.2d 175. The court's finding of subordinate facts is sustained by the evidence and warrants its conclusion that the plaintiffs were aggrieved by the decision of the board.

The defendant's brief states that the other issue is whether the court erred in concluding that the board abused its discretion in allowing the transfer. Inasmuch as the record does not contain a transcript of

the proceedings before the board or a statement from its record of the proceedings before it of the facts upon which it acted, the court's conclusion that the board did abuse its discretion is to be tested by the facts which the court has found. *Grady* v. *Katz*, 124 Conn. 525, 530, 1 A.2d 137; *Levine* v. *Zoning Board of Appeals*, 124 Conn. 53, 58, 198 A. 173. Only circumstances justifying, within the terms of article 5, § 5 (4), a finding that the strict application of the 1000-foot restriction to the defendant's store at 219 Spruce Street would constitute "unusual difficulty or unreasonable hardship" would warrant the granting of the variance. Under the express terms of the subsection, the board's power to grant a variance existed only in a case where "by reason of exceptional shape, exceptional topography or other exceptional situation or conditions, unusual difficulty or unreasonable hardship would result to the owners of [the] property." The finding makes clear that there was nothing which by reason of the exceptional shape or topography of the defendant's property or other exceptional situation as to it could constitute an unusual difficulty or unreasonable hardship to him. The failure of the board on July 16, 1951, to state any reason for its action in granting the variance may well be attributable to its realization that no unreasonable hardship within the meaning of the ordinance had been demonstrated by the defendant. Be this as it may, two months later, after the plaintiffs had appealed to the Court of Common Pleas, it did amend its record of the July meeting by specifying the three reasons for its action which are recited above.

None of these stated any reason within the purview of the regulations for granting a variance or constituted any "unusual difficulty or unreasonable

hardship" to the defendant as to his property in question. We need not determine whether the physical condition of the applicant can ever be the basis upon which a board of zoning appeals may predicate a variance. If we assume that possibility, the board's statement that "[t]here is a physical hardship alleged by the applicant by reason of a health condition" is far from a statement that any such hardship in fact existed, and even had this latter statement been made it would have been entirely without factual support in the finding. The board's statement that "[t]here is considerable hardship involved" by reason of the defendant's inability to use the premises "for any profitable enterprise" states no valid and sufficient reason for its action; *Delaney* v. *Zoning Board of Appeals,* 134 Conn. 240, 243, 56 A.2d 647; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 22, 157 A. 273; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 542, 45 A.2d 828; *Benson* v. *Zoning Board of Appeals,* 129 Conn. 280, 283, 27 A.2d 389; *Piccirillo* v. *Board of Appeals on Zoning,* 139 Conn. 116, 121, 90 A.2d 647; neither does its suggestion that, this "being merely a transfer from one location to another," "no increase in the number of liquor outlets" is involved. The matter was not for the board's control or consideration. It had no authority to regulate the number of outlets by requiring that as a condition precedent to the granting of the variance the defendant should see that 35 Oak Street remained vacant for thirty days, thereby precluding, under another provision of the regulations, its further use for the sale of liquor. *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 293, 57 A.2d 259. The fact that the Oak Street place was to be so vacated was not a factor which the board could properly consider in determining the question of

unreasonable hardship to the defendant. The board was unwarranted in granting the variance for any of the reasons stated upon its records. Furthermore, the record before us is barren of any facts affording a valid reason for granting it.

The defendant's argument appears to disregard the true import of the regulations. Subsection 4 of article 5, § 5, consists of two parts. The first prescribes that only for an "unusual difficulty or unreasonable hardship" falling within its terms can a variance in any event be granted. The second provides that even though such a difficulty or hardship does exist, no variance shall be granted if (1) it would impair the integrity of the zoning regulations or (2) involve substantial detriment to the public welfare, or if (3) there is an absence of special circumstances attaching to the property which do not apply to other property in the same neighborhood. Subsection 6 adds the further prohibitions that a variance shall not be granted unless (4) it is in accord with the comprehensive plan of the regulations and (5) it is found that the proposed use would not give rise to a traffic hazard or (6) interfere with the pattern of highway circulation or (7) tend to depreciate the value of property in the neighborhood, including residences. In other words, under the regulations the board, even where a finding of unreasonable hardship is warranted, is expressly prohibited from granting a variance if this would be violative of any one or more of the seven conditions just recited.

It therefore becomes clear that on the record in the case at bar, even had it appeared that there was no violation of any of these seven requirements, this could afford no affirmative reason for granting the variance. Since the facts failed to disclose any un-

reasonable hardship, the sine qua non of the defendant's right to relief, facts as to either compliance with or violation of the seven requirements were of no controlling importance. Consequently the court did not err in refusing to hold that facts showing such compliance could warrant a variance or in excluding the evidence offered by the defendant in support of his claim that certain such facts existed. While it is not essential, we do take occasion to make this further comment concerning two only of the seven above requirements. The variance granted gave rise to a nonconforming use at 219 Spruce Street where none had existed. As we have pointed out, the maintenance of a package store at 35 Oak Street was a nonconforming use. The regulations made no provision for the transfer of a nonconforming use. It is a fundamental principle of zoning that, while it is deemed necessary to permit the continuance of nonconforming uses which existed when the zoning regulations were adopted, the aggregate extent of such uses is to be reduced as rapidly as destruction of the property or discontinuance of nonconforming uses occurs. Bassett, Zoning, p. 105; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 23, 157 A. 273. Thus the restriction will be more closely approximated. *Rafala* v. *Zoning Board of Appeals,* 135 Conn. 142, 146, 62 A.2d 337. To permit the transfer of the nonconforming use at 35 Oak Street to 219 Spruce Street, where none had existed, would be in direct violation of the above principle. It would involve an "impairment of the integrity" of the regulations in violation of subsection 4 and a breach of the requirement of subsection 6 that all determinations of the board be in accord with the comprehensive plan set forth in the regulations. This fact but serves to confirm our conclusion that the court did

not err in concluding that the board abused its discretion in granting the variance.

There is no error.

In this opinion the other judges concurred.