SOUTH CENTRAL IMPROVEMENT ASSOCIATION *v.*
CITY OF ST. CLAIR SHORES.

1. Municipal Corporations—Rezoning Residential Area to Com-
mercial and Light Industry Uses—Public Health—Noncon-
forming Uses.

The rezoning of 38 lots in a triangular area practically sur-
rounded by territory zoned and used for residential purposes,
so as to permit lots in such tract to be used for commercial
and light industry purposes was invalid, where such rezoning
had no purpose of lessening congestion on the public streets
or to promote public health, safety and general welfare and
appears to have been primarily for the purpose of giving
certain owners the right to use their properties for a different
nonconforming use than had theretofore been made (CL 1948,
§ 125.581).

2. Same—Zoning Ordinances—Nonconforming Buildings and
Uses.

The provision of a municipal zoning ordinance permitting the
continuation of a nonconforming use is designed to avoid
the imposition of hardship upon the owner of property, but
the limitation upon such use contemplates the gradual elimina-
tion of the nonconforming use and does not permit the erec-
tion of new nonconforming buildings or additions to existing
nonconforming buildings (CL 1948, § 125.581).

3. Same—Zoning Ordinances—Rezoning Residence to Commercial
and Industrial Uses.

The fact that a city has only very small areas for industrial
uses from which tax revenues may be obtained and that the
residential expansion and rapid growth creates serious finan-
cial problems in the furnishing of adequate school facilities

References for Points in Headnotes
[1]  58 Am Jur, Zoning § 26.
[2]  58 Am Jur, Zoning § 155 *et seq.*
[3]  58 Am Jur, Zoning § 25 *et seq.*

and municipal services does not justify the rezoning of a tract of 38 residential lots to commercial and light industry uses, where the tract is surrounded by residential area except for the rear end of 2 lots used for commercial purposes and original nonconforming use to which some of the tract had been put had been discontinued.

Appeal from Macomb; Spier (James E.), J. Submitted January 17, 1957. (Docket No. 93, Calendar No. 46,912.) Decided April 22, 1957.

Bill by South Central Improvement Association, Incorporated, a Michigan corporation, and 6 property owners, against the City of St. Clair Shores, a municipal corporation, and certain of its officials, to restore residential zoning and enjoin commercial uses in area. Decree for plaintiffs. Defendants appeal. Affirmed.

*Hand, Sullivan, Hull & Kiefer (Robert E. Sullivan, of counsel), for plaintiffs.*

*John M. Veale (John H. Yoe, of counsel), for defendants.*

KELLY, J. The city of St. Clair Shores, on February 7, 1955, rezoned 38 residential lots to commercial including light industry and shops. Five of these 38 lots had for a number of years been occupied by a nonconforming use. Defendant city appeals from a decree enjoining the city from rezoning these lots.

The rezoned 38 lots are surrounded on all sides by residential lots. The 2 blocks abutting and immediately north consist of 54 residential lots, on which there are 12 or 13 residences, and immediately south and abutting the rezoned lands in question are 163 residential lots with scattered residences in existence.

With the exception of 1 block of 22 lots 2-1/2 blocks west of the rezoned area, the lots are residential. These 22 lots were rezoned by the city so it could maintain a garage on the tract. Immediately north of this garage is a park owned by the sanitary district for a future sewage disposal plant.

These 38 rezoned lots form an unusual area, properly described by the court as "an area that is shaped like half of a long narrow arrowhead projected westerly into a residential area."

The only commercial property abutting the rezoned tract are the rear ends of 2 lots fronting on Little Mack avenue, described by the court as "the shaft of the arrowhead as it is driven westward into the residential district." The east end of the rezoned area is 1 block west of Little Mack avenue.

When the zoning ordinance was adopted in 1929 a nonconforming use was granted to a Mr. Dyer as the owner of a riding stable which occupied lots 220, 221 and 222. The record discloses almost 26 years of continuous litigation between the city of St. Clair Shores and the owner of this riding stable, prior to the adoption of the now-complained-of rezoned ordinance. The riding stable business did not prosper and the building was allowed to deteriorate. The owner of the lots repeatedly endeavored to obtain a rezoning without success.

In 1952 the owner of the riding stable sold his property to Bartholomew. Bartholomew replaced broken windows, repainted the building, and started a lumber or woodworking mill on the premises.

In July, 1953, Bartholomew and Dyer commenced an action in the Macomb circuit court attacking the zoning ordinance as invalid, and claiming the municipality was illegally attempting to limit the use of the premises as an existing nonconforming use. The defendant city denied plaintiff Bartholomew's right to maintain the new business, and insisted that.

the property in question was properly zoned as residential and should be so continued. The case was tried before the Hon. James E. Spier, who is also the judge in the present case. In that case the court ruled against plaintiffs, and stated:

"Plaintiff Dyer has abandoned his nonconforming use extended to him by the city authorities, by ceasing the use permitted to him, and as indicated by his sale of the property to another person engaged in an entirely different industrial business. He is not exactly in position to ask the aid of equity after 25 years' notice of the ordinance (as of today) and its restrictions, and after 18 years of nonconforming use up to 1947 when it apparently ceased.

"Nor is plaintiff Bartholomew in any better position in a court of equity. He bought the property with full knowledge of the ordinance and restrictions as to use."

Within 5 days after successfully resisting plaintiff Bartholomew's suit in the circuit court, the defendant city rezoned Bartholomew's 3 lots used for mill work and, also, 35 additional lots. Bartholomew had acquired 18 or 19 of these 35 lots, and he entered into an agreement with the city whereby an open roadway could be constructed between the rezoned lots and the residential lots to the south, together with a green wall of shrubbery to separate the industrial from the residential area.

Before discussing the reasons advanced by the councilmen for this rather unusual and sudden action after defendant city's court victory, it is necessary to give some consideration to the other 2 nonconforming use lots, which will be referred to as the "quonset lots."

These "quonset lots" (lots 227 and 228) are approximately 200 feet west of the above-described riding stable lots. The defendant city in March, 1946, rezoned several lots to light industry and a

building of the quonset-hut type was erected on lot 228 for the purpose of war production. These lots were later rezoned back into residential in September, 1951, but the quonset owner was granted a nonconforming use.

Two of defendant's councilmen, namely, McIntyre and Sicklesteel, testified at the present trial. On December 18, 1954, Councilman McIntyre and James W. Miller, planning commissioner, presented a written report to the council recommending that the lots now in question be continued as residential lots. Councilman McIntyre explained his vote on February 7, 1955, to rezone the area in question as commercial, by saying:

"I voted to change this to commercial development merely to accommodate Mr. Bartholomew, who was operating under a nonconforming use; and the owners of the quonset hut who were operating under a nonconforming use on a residential property."

Councilman Sicklesteel testified:

"I felt this: whereas several years ago, when the Dyer Riding Academy had that property it was in a very dilapidated condition; it was, and should be removed. But as of the time of the action you speak of the property had been improved to an extent that it was a—it was really an asset to the community. And I think it was, it's very satisfactory credit to that area.

"And I also felt that if the council should take action to rezone that triangular area there, including the quonset hut, that to commercial, that it would also be beneficial to that area, inasmuch as it would allow improvement and refacing of the quonset hut, which could not be done under a nonconforming occupancy.    *    *    *

"And—and I felt that it was in the best interests to the health, the safety, and welfare of the area involved that it be done that way. I felt then that if

that went commercial that they could make the quonset hut a little better appearing."

There is nothing in this record to sustain a conclusion that the rezoning was for the purpose of lessening congestion on the public streets or to promote public health, safety and general welfare, as provided in CL 1948, § 125.581 (Stat Ann 1949 Rev § 5.2931), authorizing cities to enact zoning ordinances. To the contrary, the record sustains the trial court's conclusion that the dominant factor in bringing about the rezoning was to give the nonconforming users (the mill work and quonset hut owners) commercial privileges.

This Court has held that the provision of a zoning ordinance permitting the continuation of a nonconforming use is designed to avoid the imposition of hardship upon the owner of property, but the limitation upon such use contemplates the gradual elimination of the nonconforming use and does not permit the erection of new nonconforming buildings or additions to existing nonconforming buildings. See *Cole* v. *City of Battle Creek,* 298 Mich 98; *Palmer* v. *City of Detroit,* 306 Mich 449; *Redford Moving & Storage Co.* v. *City of Detroit,* 336 Mich 702; *Penning* v. *Owens,* 340 Mich 355.

Appellants call this Court's attention to the fact that St. Clair Shores has only very small areas for industrial use from which tax revenues may be obtained, and that the residential expansion and rapid growth creates serious financial problems in the furnishing of adequate school facilities and municipal services. This factor would not justify in this case the rezoning of the area in issue.

The decree of the trial court is affirmed, with costs to appellees.

Dethmers, C. J., and Sharpe, Smith, Edwards, Voelker, Carr, and Black, JJ., concurred.