58 N.J. Super. 127 (1959)
155 A.2d 554
NORMAN HANTMAN AND ADA HANTMAN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF RANDOLPH, A MUNICIPAL CORPORATION, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1959.
Decided November 13, 1959.
*130 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Ralph Porzio argued the cause for plaintiffs-appellants.
Mr. Harry L. Sears argued the cause for defendants-respondents (Messrs. Young and Sears, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiffs, Norman and Ada Hantman, are owners of premises in Randolph Township, Morris County, consisting of 12 structures, comprising 19 dwelling units and a central recreation hall, all of which were described in the testimony as "another one of the bungalow colonies." They brought this action in lieu of prerogative writs principally to obtain a declaratory judgment that they are entitled to occupy or lease the dwelling units throughout the entire year, as against the contention of the defendant township that residential occupancy of the units must have a seasonal limitation. The Law Division sustained the township's position and entered judgment restraining use of the bungalows "during that period of the year when heat is required full time to render such structure[s] habitable." The basis for the issuance of the injunction was the court's finding that year-round occupancy of the units would constitute an unlawful extension of a nonconforming use.
We have recently reviewed the zoning history of Randolph Township as it relates to the peculiar problems created by the location there of 40 or 50 bungalow colonies with a combined total of 600 living units. See Brundage v. Randolph Tp., 54 N.J. Super. 384 (App. Div. 1959), affirmed per curiam 30 N.J. 555 (1959). We assume familiarity with the facts and ordinances therein discussed. *131 It suffices here to repeat that many of the bungalow colonies have existed in the township since prior to 1938 when the first zoning ordinance was enacted. Most of the colonies, including that of plaintiffs, were located in areas later designated as residential zones. Not compliant with residential use regulations in such particulars as minimum permissible floor space, the bungalows were throughout the years nonconforming uses.
In February 1957, however, the township, through its planning board and township committee, decided to "legalize" the bungalow industry. An ordinance of that month established a B-3 resort business zone, consisting of four widely scattered districts, within which the colonies would be permitted uses and, as such, allowed to be improved upon by their respective owners. Until specific use regulations were provided  and they were not until an ordinance was enacted in November 1957  the B-3 zones were to be governed by the same regulations as had been provided for the R-2 one-family residential zone.
It was not until November 1957 that an ordinance was adopted defining a bungalow colony and permitting occupancy of the rental units "only on a seasonal basis, viz.: May 1 through September 30th." The defendant has stipulated in the pretrial order that this particular ordinance will not be relied upon to defeat plaintiffs' rights, if any, to lease the units on a year-round basis.
Plaintiffs' 11 dwellings and casino are on 5 1/2 acres of land. Six buildings accommodate one family each, three can house two families, one can be rented to three families, and one to four families. They range in floor area from 750 to 1,330 square feet; all are one story in height and have basements and heating facilities. Plaintiffs maintain they have all the necessary facilities and improvements for full-time occupancy. Mr. Hantman testified that he and his brother had occupied two of the buildings full-time in 1937 and that during the war years there was some year-round occupancy by workers in defense plants in the county.
*132 In June 1957 plaintiffs applied for building permits for the erection of chimneys. The permits were granted and the chimneys installed. On September 11, 1957 the building inspector issued a stop work notice. A letter of that day explained that the proposed change of use from "Summer Bungalows" to all-year-round dwellings violated that section of the zoning ordinance prohibiting any extension or change of a nonconforming use without a certificate of occupancy from the building inspector. By this date, plaintiffs had entered into leases with eight or nine tenants "on a permanent basis," with month-to-month rental arrangements.
At the trial the building inspector testified that he observed "no marked difference in general construction details" or in size and accommodations offered between plaintiffs' units and the balance of the 600 bungalows in the township. Defendant also produced Herbert H. Smith, the township's planning and zoning consultant. He said that the resort uses occupy 18% of the total land developed in the municipality. The bungalows varied markedly, ranging from a "fairly elaborate type" to those he classified as "actually being blighted." This expert considered the colonies as a business enterprise deserving of special attention and standards, rather than as being residential in character. He described the Hantman grouping as "representative"  "the typical arrangement." He testified in part as follows:
"* * * to me this is one of the most important principles in the future planning and zoning of Randolph Township, and that is that the only logical way in which these uses, the bungalow colonies and hotels and all of the others that go into these seasonal use, can be treated in such a way that they will not become a blighting factor on the future community is to make certain that the seasonal occupancy and the seasonal use is absolutely preserved and that it is never extended in these areas, that is, it is never extended to what might be classified as year round or general usage."
The Law Division judge ruled that although plaintiffs' structures had been used for dwelling purposes, the colony constituted a business use. He found that whatever full-time *133 occupancy there had been in the past was "sporadic" and "incidental to the primary business conducted," and accordingly determined that at the passage of the ordinance in February 1957 plaintiffs' business use "must be viewed as having been seasonal in nature." His conclusion was that yearly occupancy would constitute an extension, in point of time, of a nonconforming use, and therefore that the township was entitled to injunctive relief.
There is nothing in the record to warrant a substituted finding of fact on the question of the existence of yearly occupancy in the past, and we affirm without further discussion the trial court's negative finding in this respect. R.R. 1:5-4(b); R.R. 2:5.
The principal thesis developed by plaintiffs on this appeal seems to be that the trial court was in error in finding that the Hantman colony was a nonconforming use and therefore not enlargeable. It is urged that since the governing body had not prescribed use regulations for the resort zone specifically limiting occupancy on a seasonal basis, it was not for the building inspector to accomplish the same result by the issuance of the September 1957 stop work notice. See Antonelli Construction v. Milstead, 34 N.J. Super. 449, 456 (Law Div. 1955). Plaintiffs' position is, in essence, that a hiatus existed after the passage of the February 1957 ordinance and prior to the passage of the November 1957 ordinance, during which the bungalow owners had the right to use their properties in any lawful way, including year-round occupancy. If this argument prevails, plaintiffs will then be in a position to claim that they had a nonconforming use of full-time occupancy protected (by R.S. 40:55-48) from the seasonal restriction imposed by the November ordinance.
This contention rests on the premise that the colonies ceased to be nonconforming uses once the February 1957 ordinance became law. There is no question but that plaintiffs' business, located as it was in a residential zone, was a nonconforming use up to the month of February. The *134 issue is, therefore, whether the February ordinance had the effect of making plaintiffs' business a conforming use for the following nine months. If so, plaintiffs could extend such use, and such extension would in turn become nonconforming in respect of the November ordinance.
It is clear to us that the ordinance had no such effect. No intent is revealed therein to relieve the B-3 resort business zone from the necessity of complying with whatever use regulations had been provided therefor. Indeed, section III states, "Regulations governing R-2 Zone shall apply [to the B-3 zone] until specific regulations are adopted * * *." A "nonconforming use" is defined in section I (r) as
"any use of property which does not comply with the regulations of the ordinance for the district in which it is located * * *."
The quoted portion of section III indicates it was the intention of the governing body that those areas within the B-3 resort zone that had been situated in an R-2 residential district should continue to be deemed "located" within the R-2 district for all regulatory purposes. Since plaintiffs' property did not for the most part "comply with the regulations" of the R-2 district in such matters as "Families per Building," and "Minimum Size Lot," the bungalows remained nonconforming uses under the terms of section I(r).
Moreover, even if it were assumed that the governing body intended by the February ordinance to relieve the B-3 resorts from compliance with the R-2 regulations, plaintiffs' colony remained a nonconforming use in the sense that none of the bungalows contained living floor space of 1,350 square feet as required by section XI(k). Our view is that compliance with this section was required until the governing body enacted a less exacting floor space provision specifically for the bungalows.
It thus becomes clear that for all present purposes plaintiffs' colony remained a nonconforming use notwithstanding the February ordinance.
*135 Plaintiffs next dispute the existence of any municipal power to restrict occupancy in terms of a time dimension. The argument is that a provision in an ordinance prescribing the length of time an owner may use his premises is invalid and an unconstitutional taking of property without due process of law. Cited in support is De Benedetti v. River Vale Township, 21 N.J. Super. 430, 436 (App. Div. 1952):
"* * * it is the use of the land itself which is controlled, not one's time, and it is that use of land which is the subject matter of the legislative grant of authority to municipalities to control by zoning regulations."
We choose to consider this argument together with plaintiffs' other contention to the effect that increasing the period of occupancy represents an "insubstantial change and not an extension of a non-conforming use." The two arguments are but opposite sides of the coin. If the owner of a nonconforming use has no right to increase that use in point of time, there can be no objection from a constitutional standpoint to an ordinance so stating.
We must first take cognizance of the spirit of the law toward nonconforming uses. Although such uses may be continued as of right, R.S. 40:55-48, they may not be enlarged as of right. Grundlehner v. Dangler, 29 N.J. 256, 263 (1959). They are to be restricted rather than expanded. Gross v. Allan, 37 N.J. Super. 262, 272 (App. Div. 1955). Protection will not be accorded unless the use is substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. Heagen v. Borough of Allendale, 42 N.J. Super. 472, 480 (App. Div. 1956). Nonconforming uses may not be enlarged as of right "except where the enlargement is so negligible or insubstantial that it does not fairly warrant judicial or administrative notice or interference." Grundlehner v. Dangler, supra, 29 N.J. at page 263. Where there is doubt as to the substantiality of the extension, it should be disapproved. Id., 29 N.J. at page 263.
*136 On the other hand, it has been said that the rule forbidding a substantial extension does not prevent an increase in the amount or intensity of use within the same area. 101 C.J.S. Zoning § 193, p. 955 (1958). Neither is an increase in the volume of business alone ordinarily considered an expansion of a nonconforming use. 2 Rathkopf, Zoning and Planning (3d ed. 1957), c. 60, p. 45; 8 McQuillin, Municipal Corporations (3d rev. ed. 1957), § 25, 207, p. 519. But see id., § 25.208, p. 523, text at n. 55. In the same work it is said:
"Extension in point of time, as by conversion of a nonconforming use from seasonal to year-round operation, is also prohibited." 8 McQuillin (1958 Cum. Supp.), § 25.206, p. 50.
See also 101 C.J.S. Zoning § 192, p. 953, n. 75. These authorities in turn rely upon Beerwort v. Zoning Board of Appeals of Town of Coventry, 144 Conn. 731, 137 A.2d 756 (Sup. Ct. Err. 1958), a holding directly in point that year-round use of a trailer park, as opposed to seasonal use, constituted a proscribed extension of a nonconforming use.
The De Benedetti case, supra, is not apposite. There, the plaintiff was a part-time commercial chicken farmer on lands in a residential zone. He sought a building permit to erect additional chicken-housing facilities. The defendant township denied the permit for fear that the plaintiff, having lost his regular employment, would devote full time to the farming enterprise. This court affirmed a judgment requiring issuance of the permit on the grounds that an ordinance expressly permitted persons "in the normal course of" farming to erect additional buildings and that the proposed increase was not a substantial enlargement. It was determined that the amount of time he devoted to his business was immaterial since his farming use was entitled to the benefit of the ordinance. 21 N.J. Super. at page 436. It suffices to point out that in the instant case the question is not the number of working hours devoted to the enterprise by the proprietors but the amount of time, in terms *137 of calendar months, during which the enterprise itself will operate. The element of time is relevant here for its own significance, and not because its consumption may be reflective of the plaintiffs' true occupation.
Our judgment is that an increase in the time period during which a nonconforming use is operated may justifiably be the basis for a finding of an unlawful extension thereof, just as changes in the functional use of land or increases in the area of use have been.
But more fundamentally, in determining whether an activity is within the scope of a permitted nonconforming use, regard must be had to the particular facts of the case, the terms of the particular ordinance, and the effect which the increased use will have on other property. Consequently, it is perhaps decisive in the present case that there exists in the record the unrebutted and unequivocal testimony of the township's zoning consultant that year-round operation of the bungalow colony would have a deleterious effect on the general welfare of the municipality. Mr. Smith testified that any breaking down of the seasonal character of the bungalow colonies would commence a change in the development of the township from single-family homes on good-sized lots to four-family units on what had been recreational camp sites. He noted the adverse effect of year-round use on the community's population density pattern. He described the difference between the psychology of a vacationer and that of a permanent resident, and predicted that the latter would expect and be entitled to municipal services and facilities. He commented that the legitimization of bungalows as permanent dwellings would "establish a very low ceiling down here as a base for zoning," but if restricted to seasonal use, "everybody goes on supporting the standards for year round one family dwelling characteristics that we want." In effect, this expert testified that year-round use of the bungalows would lead to a complete disruption of the township's plans for betterment of the general welfare. From his testimony, the inference is clear that the township *138 would not have "legalized" the bungalow colonies had its planners contemplated they would be used as single-family dwellings.
On the whole case, the conclusion is required, and we hold, that the proposed change in use of the bungalows to full-time residences constitutes a substantial, and therefore an unlawful extension of a nonconforming use.
Judgment affirmed.