142 P.3d 693

AUSTIN SHEA (ARIZONA) 7TH STREET AND VAN BUREN, L.L.C., an Arizona limited liability company, Plaintiff/Appellee,

v.

CITY OF PHOENIX, a political subdivision of the State of Arizona; City of Phoenix Board of Adjustment, Defendants/Appellants.

No. 1 CA–CV 05–0062.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 3, 2006.

Review Denied Jan. 9, 2007.

Jaburg & Wilk, P.C. By Kathi M. Sandweiss and Roger L. Cohen, Phoenix and David K. Jones, Chandler, Attorneys for Plaintiff/Appellee.

Office of the City Attorney By Gary Verburg, Acting City Attorney and L. Michael Hamblin, Assistant City Attorney, Phoenix, Attorneys for Defendants/Appellants.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises from a decision by the City of Phoenix Board of Adjustment ("the Board") to rehear an appeal taken by Plaintiff/Appellee Austin Shea (Arizona) 7th Street and Van Buren, L.L.C. ("Shea") from a zoning ordinance interpretation made by the City of Phoenix Zoning Administrator. On rehearing, the Board reversed a decision it had previously rendered in Shea's favor. Shea filed a special action proceeding against Defendants/Appellants City of Phoenix ("the City") and the Board, asserting the Board abused its discretion, first, in deciding to rehear its appeal and, second, in reversing its original decision. Deciding the first but not the second issue, the superior court ruled in Shea's favor and found the Board had abused its discretion in rehearing the appeal.

¶ 2 The issue before us is whether the superior court correctly determined the Board had abused its discretion in deciding to rehear Shea's appeal. To decide this issue, we must first interpret the zoning ordinance provision that provides an "appeal may be reheard only when there has been a manifest error affecting the Board's action." We must then decide whether the Board acted arbitrarily, capriciously or abused its discretion in deciding to rehear Shea's appeal. For the following reasons, we reverse the superior court's judgment and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Shea owns property in a City-designated redevelopment area at the northeast corner of 7th Street and Van Buren Street, near downtown Phoenix. Section 705.2(A)(7)(d) (2005) of the Phoenix Zoning Ordinance prohibits "outdoor advertising" structures in any designated redevelopment area.

¶ 4 In 1999, Shea began efforts to construct a "media sculpture" on the site. The Phoenix Planning Department opposed the project because it believed the project was "outdoor advertising" [1] and therefore prohibited. In March 2000, Shea filed a proposed text amendment to the Zoning Ordinance that would have allowed a use permit procedure for outdoor advertising in redevelopment areas. The Phoenix City Council denied the proposal in November 2000.

¶ 5 Shea then revised its proposed project. Shea proposed building a two-story 900 square foot glass structure that would house a television broadcast station and four video screens, each $16' \times 12'$, set back at least 6'1" from the structure's inside windows.[2] Shea planned on displaying commercial advertising, news, weather, political messages, and general information on downtown events and activities on the video screens. Shea also planned on selling specialized motion picture and video equipment from the glass structure. The City placed a hold on Shea's building permit application because the video screens constituted, in its view, off-site ad-

---

1. Section 202 of the Zoning Ordinance defines "Sign, Outdoor Advertising" as follows:
   Any billboard or other sign, which is not appurtenant to a use of the property, a product sold on or the sale or lease of the property on which it is displayed and which does not identify the place of business as a purveyor of the merchandise, services, etc., advertised upon the sign.

2. The significance of the 1" in the 6'1" setback becomes apparent when looking at the definition of window sign. Section 202 of the Zoning Ordinance defines "Sign, Window" as follows:

   Any sign affixed to the interior or exterior of a window, or any sign located inside a building within *six feet* or the interior side of a window and displayed so as to attract the attention of persons outside the building. Merchandise which is included in a window display shall not be considered as part of a window sign. (Emphasis added.)

vertising in violation of § 705.2(A)(7)(d) of the Zoning Ordinance.

¶ 6 In October 2001, Shea filed an Application for Zoning Adjustment with the City's Zoning Administrator and requested an interpretation of § 705.2(A)(7)(d). After holding a public hearing on the application, the Zoning Administrator concluded Shea's proposed use of the video screens was "not addressed in the [zoning] [o]rdinance" and was therefore "prohibited." [3] Shea appealed the decision to the Board and it upheld the Zoning Administrator's decision.

¶ 7 In March 2002, Shea filed a Complaint for Statutory Special Action, claiming the Board's decision was arbitrary, capricious, and an abuse of discretion. The superior court disagreed and found the proposed "land use is simply technology enhanced 'outdoor advertising' not appurtenant to any permitted use of the land because the primary land use is outdoor advertising." Accordingly, the superior court concluded the Board had not abused its discretion or acted arbitrarily or capriciously in interpreting and applying the Zoning Ordinance.

¶ 8 Shea appealed. In March 2005, we affirmed the superior court's decision. *Austin Shea (Arizona) 7th Street and Van Buren, L.L.C. v. City of Phoenix*, 1 CA–CV 02–0479 (Ariz.App. Mar. 22, 2005) (mem.decision).

¶ 9 In November 2002, before we issued our memorandum decision, Shea again revised its proposed project. This time, Shea proposed leasing the glass structure to a tenant who would display and sell motion picture and video equipment and operate a television station that would broadcast commercial and informative programming to the four video screens and over the Internet. An on-site employee would run the sales operation and the television station. Shea asserted that, because of these other on-site activities, the video screens were "appurtenant to a permitted use of the property, [and did] not qualify as outdoor advertising."

¶ 10 In connection with the revised proposal, Shea requested the Zoning Administrator to interpret the Zoning Ordinance by responding to five questions ("interpretive questions"). The interpretive questions were as follows:

1) whether a television screen displaying the video stream being broadcast by a television broadcasting station from within the station's building is appurtenant to the television broadcasting station;

2) whether an operational television screen of the type sold on the premises, displayed in a window display of such merchandise, is appurtenant to a business involved in the sales of specialized motion picture/television equipment;

3) whether a television screen located within a building, more than six feet inside a window but visible from outside the building, is regulated under Section 705 of the Zoning Ordinance;

4) whether a television screen, appurtenant to a permitted use of the building, located within the building and more than six feet inside the window but visible from the exterior, is regulated as a sign under Section 705 of the Zoning Ordinance, and

5) whether the City's regulations on outdoor advertising, as they may apply to the display of television broadcasts on video screens visible from the exterior of a building, are unconsititional [sic].

¶ 11 After holding another public hearing, in February 2003, the Zoning Administrator responded to Shea's request. The Zoning Administrator concluded the proposed use was "sufficiently unusual that it is not part of the current regulatory scheme," was not "sufficiently analogous to any other permitted use," and was "prohibited."

¶ 12 Shea appealed the Zoning Administrator's decision to the Board. The Board heard Shea's appeal on March 6, 2003. During the hearing, speakers representing Shea and the City first clarified that Shea was asking for a citywide, not simply a "site specific," response to the interpretive questions. The speakers then addressed Shea's

---

**3.** In so finding, the Zoning Administrator was evidently referring to § 701 of the Zoning Ordinance. That section states, in pertinent part,

"[a]ny use that is not specifically permitted or analogous to those specifically permitted is hereby declared to be a prohibited use and unlawful."

interpretive questions and focused their presentations on whether the proposed video screens were appurtenant to a permitted use and whether, given their 6′1″ setback, they were window signs and thus unregulated by § 705 of the Zoning Ordinance. The Board did not consider whether the video screens *were governed by other provisions of the* Zoning Ordinance applicable to signs.

¶ 13 On motion by Board member Patrick Paul, the Board voted 3–2 to answer "yes" on questions one and two and "no" on questions three and four. The Board did not respond to question five, deciding it did not need to do so in light of its responses to the other four interpretive questions.[4] The net effect of the March 6, 2003 Board decision was to approve Shea's proposed project.

¶ 14 By letter dated March 27, 2003, the City asked the Board to reconsider its March decision pursuant to § 303(C)(3) of the Zoning Ordinance. That provision states "[a]n appeal may be reheard only when there has been a manifest error affecting the Board's action." The City argued the Board had committed manifest error in its March decision by failing to consider all of the relevant provisions of § 705 of the Zoning Ordinance as well as other "logical factual scenarios" that would impact the Board's citywide interpretation:

> The transcript from the March 6th hearing indicates that the Board based its decisions primarily on the fact that the on-site motion picture/television screen was not a "window sign" because it was located six feet one inch behind the window, and therefore, it was not a "sign regulated by Section 705.["] A window sign is defined as follows in the Phoenix Zoning Ordinance:

**4.** Through its answers, the Board interpreted the Zoning Ordinance as follows:
1) A television screen displaying the video stream being broadcast by a television broadcasting station from within the station's building *is* appurtenant to the television broadcasting station;
2) An operational television screen of the type sold on the premises, displayed in a window display of such merchandise, *is* appurtenant to a business involved in the sales of specialized motion picture/television equipment;

> **Sign, window:** Any sign affixed to the interior or exterior of a window, or any sign **located inside a building within six feet of the interior side of a window** [*emphasis added*] and displayed so as to attract the attention of persons outside the building. Merchandise *which is included in a window display* shall not be considered as part of a window sign.

The City of Phoenix concedes that the structure presented by the Applicant to house the motion picture/television screen may have enabled it to avoid being defined as a window sign. However, upon reading the description of it provided by the Applicant's representative, it is clear that the on-site motion picture/television screen still does qualify as a "sign". The Phoenix Zoning Ordinance defines a sign as follows:

> **Sign:** Any identification, description, illustration, symbol or **devise** which is **affixed** directly or indirectly upon a building, vehicle, structure, or land and **which identifies or directs attention to a product,** place, activity, person, institution, or business.

The proposed motion picture/television screen is a device. It is affixed to the building being proposed. And it does direct attention to product(s). It may not be a window sign, but it is a sign. There are regulations of general applicability to signs in Section 705 that would then regulate this sign. For example, Section 705(C) contains a requirement for a use permit for a sign with animation such as the sign at issue in this case. The Board did not consider any of the other provisions of Section 705, or the definition of sign in reaching its answer to this question. In

3) A television screen located within a building more than six feet inside a window but visible from outside the building *is not* regulated under Section 705 of the Zoning Ordinance; and
4) A television screen, appurtenant to a permitted use of the building, located within the building and more than six feet inside the window but visible from the exterior *is not* regulated as a sign under Section 705 of the Zoning Ordinance.

failing to do so, the Board has arrived at an incorrect answer.

¶ 15 The Board met on April 3, 2003 to consider the City's rehearing request. Of the four Board members present at the hearing, only one, Scott Davis, had voted in the majority in March. Thus, under the Board's procedural rules, only Davis could move to grant the rehearing. Davis moved to rehear Shea's appeal, and the Board discussed the motion as follows:

**Mr. Davis:** Well probably a couple of comments from me. At the original hearing over a year ago, [Shea's representative] came before us and I believe it was rejected. They went back, the applicant, and put the TV screens 6 feet 1 inch, I think, and put an employee down there. And I think the people that voted for this all recognized that it was pretty much a smoke screen. I think what the people that voted for were trying to do was to get the City to come up with some codes that regulate this sort of thing because it is going to happen sooner or later. They do it in all the major cities in the United States. But in saying that—I mean this is such an important issue citywide, I would very much like to hear some more about this and what the City has to say and I would recommend that we do hear this again and get a couple more points of view. I am not saying I am going to change my vote, but I think in fairness to my colleagues, the guys that voted for it and are not here, that we would like to hear more from the City on the future impact on this. And if there is any way—if it is going to happen—to better regulate it. So consequently, I would like to make a motion to rehear application ZA–721–02. I don't think I have to go through this whole deal . . .

**Chairwoman Parfitt:** No but, Mr. Jones, does he—would it be good for him to put

some reasons in there why he believes that there was manifest error into his motion and why he feels as though the Board needs that would be useful.

**Mr. Davis:** Let me respond to that. I am not even sure what manifest error is. I mean—I think I understand but after reading the letter from the City, there is enough questions in there that I have some questions after reading the city's position on this now that I would like to revisit it next month.

**Chairwoman Parfitt:** Do you believe that the reason that you are wanting a reconsideration—is it because you believe that within the presentation and the discussion that there was a possibility that the decision for allowing this was made in error because of lack of information on the Board's part?

**Mr. Davis:** Error on my part perhaps. I mean I—it is a very complicated issue—very complicated. And I just think in all fairness particularly to the two people that aren't here that we all rehear it with some more facts. It doesn't mean we are going to change our decision, but I think it is absolutely appropriate to have the City give us their position one more time and why they are so opposed to this. It is a big deal. And so I would like to hear it again.

The Board unanimously voted to rehear the appeal.

¶ 16 The Board reheard the appeal on May 1, 2003. At the conclusion of the hearing, a majority of the Board voted "no" on interpretive questions one, two, four, and five and "yes" on question three. Although the City has argued the Board's response to question four conflicted with the Board's response to question three, it and Shea agree the net effect of the Board's May decision was to disapprove the project.[5]

**5.** The Board thus answered the interpretive questions as follows:

1) A television screen displaying the video stream being broadcast by a television broadcasting station from within the station's building *is not* appurtenant to the television broadcasting station;

2) An operational television screen of the type sold on the premises, displayed in a window display of such merchandise, *is not* appurtenant to a business involved in the sales of specialized motion picture/television equipment;

3) A television screen located within a building more than six feet inside a window but visible

¶ 17 Shea then filed a Complaint for Statutory Special Action, pursuant to Arizona Revised Statutes ("A.R.S.") section 9–462.06(K) (1996) against the City and the Board. Shea asserted the Board had acted improperly in, first, rehearing Shea's appeal and, second, reversing its original decision.[6] Addressing only the first issue, the superior court found the Board had abused its discretion in rehearing its March 6, 2003 decision because there had been no showing of "manifest error" as required by § 303(C)(3) of the Zoning Ordinance.

¶ 18 This appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### I. The Meaning of Manifest Error

¶ 19 The issue in this case is whether the Board acted arbitrarily, capriciously or abused its discretion when it decided to rehear Shea's appeal pursuant to § 303(C)(3). The Zoning Ordinance does not define "manifest error." Relying on the "manifest" portion of this phrase, the superior court described manifest error as one that is evident, open, clear, or self-evident, although it acknowledged it could include a "failure to apprehend the issue presented" or reliance on an "erroneous and improper theory."

■ ¶ 20 On appeal, the parties spend considerable effort attempting to define manifest error. The City accepts all the definitions of the term given by the superior court, while Shea argues it should be defined narrowly— to cover only procedural, as opposed to substantive, legal mistakes. The parties' disagreement regarding the definition of manifest error presents a question of law that we review de novo. *See Gamez v. Brush Well-*

*man, Inc.*, 201 Ariz. 266, 269, ¶ 4, 34 P.3d 375, 378 (App.2001).

■ ¶ 21 To decide what manifest error means in this context, we begin by analyzing what the Board does. The Board hears and decides appeals from decisions made by the Zoning Administrator in the enforcement of the Zoning Ordinance, such as in the grant or denial of variances, the issuance of use permits, and the interpretation of the Zoning Ordinance. Phoenix Zoning Ordinance § 303(B)(1)(b); A.R.S. § 9–462.06(C). The Board may reverse, affirm, or modify orders, requirements, or decisions issued by the Zoning Administrator and is authorized to make such orders, requirements, decisions, and determinations as necessary. Phoenix Zoning Ordinance § 303(B)(1)(d). In resolving the matters coming before it, the Board meets in public and may take testimony from witnesses who are placed under oath. As the foregoing demonstrates, and as Arizona courts have explicitly recognized, the Board acts in a quasi-judicial capacity. *Lane v. City of Phoenix*, 169 Ariz. 37, 41, 816 P.2d 934, 938 (App.1991) (citing *Arkules v. Bd. of Adjustment*, 151 Ariz. 438, 440, 728 P.2d 657, 659 (App.1986)).

¶ 22 We have recognized that, just like courts, quasi-judicial bodies should be given the first opportunity to correct their own mistakes. *Brooks v. Indus. Comm'n*, 24 Ariz.App. 395, 398, 539 P.2d 199, 202 (1975). Accordingly, we have held that a board of adjustment may rehear a matter if authorized to do so by a rule falling "within the standards set forth in the legislative act." *Boyce v. City of Scottsdale*, 157 Ariz. 265, 268, 756 P.2d 934, 937 (App.1988); *see also* A.R.S. § 9–462.06(C) (authorizing board of adjustment to "adopt all rules and proce-

---

from outside the building *is* regulated under Section 705 of the Zoning Ordinance;
4) A television screen, appurtenant to a permitted use of the building, located within the building and more than six feet inside the window but visible from the exterior *is not* regulated as a sign under Section 705 of the Zoning Ordinance; and
5) The City's regulation on outdoor advertising as it applies to the display of a television broadcast on video screens visible from the exterior of a building *is not* unconstitutional.

6. The City filed a counterclaim against Shea and a cross-claim against the Board, asserting the Board's answer to question four was inconsistent with its answers to the other interpretive questions and was, accordingly, contrary to law, arbitrary, capricious, and an abuse of discretion. Because it ruled in Shea's favor, the superior court did not address the issues raised in the City's counterclaim and cross-claim.

dures necessary or convenient for the conduct of its business"). "The logic of such a proposition is clear. The sooner a mistake is perceived, the more likely it is that it can be corrected and subsequent appeals and relitigation be then avoided or minimized." *Brooks*, 24 Ariz.App. at 398, 539 P.2d at 202. Allowing quasi-judicial bodies to correct their own mistakes also serves another purpose, that of fairness.

¶ 23 The City granted the Board the power to rehear appeals so, like courts and other quasi-judicial bodies, it would have the first opportunity to correct its own mistakes. However, the City limited the self-correcting power of the Board to situations "when there has been a manifest error affecting the Board's action." In interpreting an ordinance, we give its words their ordinary or plain meaning unless it appears from the context that a special meaning was intended. *See Phoenix Newspapers, Inc. v. Superior Court*, 180 Ariz. 159, 162, 882 P.2d 1285, 1288 (App.1993).

¶ 24 In normal usage, manifest means evident, obvious, not obscure or hidden; the word is synonymous with open and clear. *See* Webster's II New College Dictionary 665 (1995) (clearly apparent to the sight or understanding; obvious); 9 Oxford English Dictionary 315 (2d ed.1989) (clearly revealed to the eye, mind, or judgment; open to view or comprehension; obvious); Webster's Ninth New Collegiate Dictionary 724 (1986) (easily understood or recognized by the mind; obvious); Webster's New Universal Unabridged Dictionary 1095 (2d ed.1983) (plain; open; clearly visible to the eye); Webster's Third New International Dictionary 1375 (1966) (not hidden or concealed; open to view). Thus, a manifest error is an error that is evident and clear.

¶ 25 Under this definition, not every error will be manifest. By prohibiting rehearings absent manifest error, the City, through its

legislative body, the City Council, was, as the superior court recognized, drawing a "boundary of finality" on the power of the Board to rehear matters.

¶ 26 However, contrary to Shea's argument, we see nothing in the foregoing definition of manifest error or in § 303(C)(3) limiting manifest errors to only procedural errors. Although the City prohibited the Board from rehearing a matter absent manifest error, it did not restrict what could constitute such an error.[7] An error of law, fact, perception, consideration, reasoning, judgment, as well as procedure, may, depending on the facts and circumstances, constitute a manifest error. Like a trial court making a discretionary decision, in deciding whether an error is manifest, the Board will need to assess the conflicting procedural, factual, or equitable considerations that vary from case to case. It can better determine or resolve such matters because it has a more immediate grasp of all the facts of the case and an opportunity to see the parties, the lawyers, and the witnesses. It also can better assess the significance and impact of what occurred before it. *Cf. State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983).

## II. Manifest Error Affected the Board's March Decision

¶ 27 The superior court found the Board had acted arbitrarily, capriciously and abused its discretion in rehearing Shea's appeal. Although the superior court did not examine the record presented to the Board at the March 6, 2003 hearing, it nevertheless found there was nothing in the Board's March decision to "support a claim of manifest error." The court found the Board decided to rehear the appeal simply "to give the City another opportunity to persuade the Board to follow its position."

7. Many different types of error can be manifest error. *See generally* Black's Law Dictionary 582 (8th ed. 2004) ("An error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record."); *State v. Jones*, 203 Ariz. 1, 5, ¶ 8, 49 P.3d 273, 277 (2002) (clear and manifest error is "shorthand" for abuse of discretion); *Hoffman v. Brophy*, 61 Ariz. 307, 312, 149 P.2d 160, 162 (1944) (manifest error is a decision based on an "erroneous and improper theory"); *Schinner v. Schinner*, 143 Wis.2d 81, 420 N.W.2d 381, 385–86 (Ct.App.1988) (manifest error is a "self-evident kind of error" resulting from "oversight, omission or miscalculation").

¶ 28 In making these determinations, the superior court focused solely on the April hearing and did not examine the record before the Board when it made its original decision in March. The City argues that without examining the basis for the Board's March decision, the superior court was not in a position to decide whether the Board had acted improperly in April when it decided to rehear Shea's appeal. We agree with the City. The superior court could not have determined whether credible evidence supported the Board's decision to rehear Shea's appeal without examining the record presented to the Board in March, when the alleged manifest error occurred. The City also argues that if the superior court had looked at the record presented to the Board in March and considered it in light of what was before the Board in April, it would have found the Board had not acted arbitrarily, capriciously or abused its discretion in rehearing Shea's appeal. We again agree with the City.

¶ 29 When a superior court is asked to review a decision made by a board of adjustment, the superior court is presented with and reviews the record before the board when the board made the decision. *See Murphy v. Town of Chino Valley*, 163 Ariz. 571, 574–75, 789 P.2d 1072, 1075–76 (App.1989). The dispositive question the superior court and, on appeal, this court must decide is whether the board, in making that decision, acted arbitrarily, capriciously or abused its discretion. *Pingitore v. Town of Cave Creek*, 194 Ariz. 261, 264, ¶ 18, 981 P.2d 129, 132 (App.1998). "Neither court may substitute its opinion of the facts for that of the Board. Rather, if there is credible evidence to support the Board's decision, it must be affirmed." *Id.* (internal citation omitted); *see also Mueller v. City of Phoenix*, 102 Ariz. 575, 581, 435 P.2d 472, 478 (1967) (court will not substitute its judgment for that of board even when the question is " 'debatable and one in which the court would have reached a different conclusion had it been the original arbitor of the issues' ") (citation omitted).

¶ 30 In this case, the record before the Board when it decided to rehear the appeal included the presentations made by the parties to the Board in March as supplemented by the City's request for a rehearing and the information presented to the Board by the parties in April when the Board heard the City's rehearing request. Both in its letter requesting the rehearing and at the April hearing, the City asserted that in March the Board had failed to consider all of the relevant provisions of § 705 of the Zoning Ordinance and other "logical factual scenarios" when it answered the interpretive questions. The City noted that most of the Board's discussion of Shea's proposal centered on whether the video screens fell within the definition of outdoor advertising or could be classified as window signs; the Board had not considered whether, given their size and configuration, the video screens qualified as signs and, if they did, whether they would be subject to other provisions of § 705 generally applicable to signs. The City, thus, argued the Board's failure to consider these other matters constituted manifest error, especially since the Board had responded to the interpretive questions on a citywide, not simply a site specific, basis.

¶ 31 In deciding whether a rehearing was warranted under § 303(C)(3), the Board was in the best position to evaluate its March decision, how it had reached that decision, whether it had adequately considered the interpretive questions, and whether it had overlooked or failed to address all relevant issues. By failing to examine the basis for the Board's March decision, the superior court effectively substituted its opinion on these matters for that of the Board. This was improper. *See Pingitore*, 194 Ariz. at 264, ¶ 18, 981 P.2d at 132.

¶ 32 Because the issue before us is the same as the issue before the superior court, that is, whether the Board acted arbitrarily, capriciously or abused its discretion in deciding to rehear Shea's appeal, we are entitled to examine the record presented to the Board. *Arkules*, 151 Ariz. at 441, 728 P.2d at 660 (citing *Sevilla v. Sweat*, 9 Ariz.App. 183, 185–86, 450 P.2d 424, 426–27 (1969)). This record contains sufficient credible evidence to support the Board's decision to rehear the appeal. As the City had argued, in March, the Board had failed to consider whether the video screens were signs and thus subject to

other provisions of the Zoning Ordinance. *See supra* ¶ 12.

¶ 33 The superior court faulted the Board for not explicitly describing the manifest error that had affected its prior decision. Although greater clarity by the Board would have been helpful, implicit in the Board's decision to grant the City's rehearing request was its acceptance of the City's argument that it had failed to evaluate Shea's proposal under other provisions of the Zoning Ordinance and needed to do so. *Cf. Coronado Co., Inc. v. Jacome's Dep't. Store, Inc.,* 129 Ariz. 137, 139, 629 P.2d 553, 555 (App.1981) (implied in every judgment are findings necessary to sustain it if reasonably supported by the evidence and not in conflict with express findings). The Board's decision to rehear Shea's appeal and the findings implicit in that decision were supported by credible evidence. The superior court should not, therefore, have vacated the Board's May 1, 2003 decision and reinstated the Board's March 6, 2003 decision.

## CONCLUSION

¶ 34 For the foregoing reasons, the superior court's judgment is reversed. Because the superior court did not decide the other issues raised by the parties regarding the Board's May 1, 2003 decision, this case is remanded to the superior court for further proceedings consistent with this opinion. We express no opinion regarding these other issues.

CONCURRING: PHILIP HALL, Presiding Judge, and G. MURRAY SNOW, Judge.