NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MICHAEL A. LEVINE, a married man, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, an Arizona municipal corporation; CITY OF PHOENIX BOARD OF ADJUSTMENT, an official body of the City of Phoenix; and SUNS LEGACY PROPERTIES, LLC, a Delaware limited liability company, *Defendants/Appellees*.

No. 1 CA-CV 15-0357
FILED 9-29-2016

---

Appeal from the Superior Court in Maricopa County
No. LC2013-000537-001 DT
The Honorable David O. Cunanan, Judge

**AFFIRMED**

---

COUNSEL

Engelman Berger, P.C., Phoenix
By Damien R. Meyer
*Counsel for Plaintiff/Appellant*

Office of the City Attorney, Phoenix
By Brad Holm, Paul Li
*Counsel for Defendants/Appellees City of Phoenix & City of Phoenix Board of Adjustment*

Snell & Wilmer, L.L.P., Phoenix
By Patrick J. Paul, Christopher P. Colyer
*Counsel for Defendant/Appellee Suns Legacy Properties, LLC*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

**W I N T H R O P**, Judge:

**¶1**        Michael A. Levine appeals the superior court's judgment affirming the decision of the City of Phoenix Board of Adjustment ("the Board") to grant Suns Legacy Properties, LLC ("SLP") a five-year use permit to operate an interim surface parking lot at the southwest corner of Madison and First Streets ("the Property") in downtown Phoenix ("the City"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The Property, which consists of parcels 112-27-069, -067, -066, and -064, is located west of Talking Stick Resort Arena—home of the Phoenix Suns—in the City's Warehouse Character Area. The Property adjoins an eastern lot consisting of two SLP-owned parcels (parcels 112-27-062 and -061) that were already being used for thirty spaces of surface parking at the time of the Board hearing. Given its location, the Property is subject to the Phoenix Zoning Ordinance ("PZO") and its Downtown Code, which is provided for in Chapter 12 of the PZO. *See* PZO § 1201(B). Levine, who develops properties in the Warehouse Character Area, owns property (parcels 112-27-068, -065, and -063) that lies approximately twenty-five feet from the subject Property.

**¶3**        SLP sought to utilize the Property as an interim surface parking lot in support of the neighboring US Airways Center.[1] SLP contacted the City, whose staff advised and confirmed that seeking a use permit was the appropriate process for obtaining approval of the proposed interim parking lot.

**¶4**        On June 17, 2013, SLP submitted Application No. ZA-226-13-7 to the City for approval of a 72-month use permit to develop an interim

---

[1]        Talking Stick Resort Arena was previously known as US Airways Center.

surface parking lot with fifty-six new parking spaces.[2]  The application identified the affected parcels as 112-27-069, -067, -066, -064, -062, and -061.[3]

¶5        At the conclusion of a zoning administration hearing held July 18, 2013, the hearing officer for the City's Planning & Development Zoning Administrator approved a five-year use permit.[4]  The hearing officer found the requested use would (1) "not cause a significant increase in vehicular or pedestrian traffic in adjacent residential areas" and would allow more on-street parking to be available to the public; (2) "not emit odor, dust, gas, noise, vibration, smoke, heat or glare at a level exceeding that of the ambient conditions"; and (3) "not contribute in a measurable way to the downgrading of property values," and would "be a benefit to the surrounding properties."  *See* PZO § 307(A)(7)(a).

---

[2]        The proposed new spaces were in addition to the eastern lot's thirty already existing spaces (which would be reduced to twenty-seven spaces to accommodate site improvements, including an improved driveway and planters).

[3]        Levine seeks to include parcels 112-27-062 and -061 as part of his appeal.  Those parcels were used as a parking lot before enactment of the Downtown Code in 2010, however, and SLP was already entitled to maintain this existing, nonconforming use.  *See* PZO § 1201(C)(3).  Although SLP's initial use permit application included parcels 112-27-062 and -061, SLP withdrew those parcels from its application on August 12, 2013 — before the Board's hearing on Levine's appeal.  In response, the City amended SLP's application by eliminating those parcels from use permit consideration.  Thus, the two eastern-adjacent parcels were not subject to the Board's decision or the superior court's review, and SLP's use permit pertains solely to parcels 112-27-069, -067, -066, and -064. We reject Levine's suggestion that reversible error occurred because the Board did not consider all six parcels in its review after two of the parcels had been withdrawn from consideration.

[4]        At the hearing, Levine's counsel stated he did not object to "the application moving forward," but explained that in the interim before the deadline to file an appeal, he planned to meet with SLP's representatives about "some proposed stipulations."

**¶6**        On August 2, 2013, Levine appealed the Zoning Administrator's decision to the Board. At a public hearing on September 12, 2013, the Board unanimously upheld approval of the use permit.

**¶7**        On October 11, 2013, Levine filed a statutory special action complaint pursuant to Arizona Revised Statutes ("A.R.S.") section 9-462.06(K) (Supp. 2015),[5] seeking to overturn the Board's issuance of the use permit to SLP. Levine alleged in part that SLP's application for the approved use permit deviated from setback and landscaping requirements set forth in the Downtown Code, SLP had not requested a variance, and the Board had violated A.R.S. § 9-462.06(H)(1) in approving the application for the use permit.[6]

**¶8**        In a minute entry filed February 20, 2015, the superior court affirmed the grant of the use permit, holding in part as follows:

> When granting a use permit, two conditions must exist: 1) the use will not cause an adverse impact on adjacent properties or properties in the area and, 2) the use must be in compliance with all provisions of the Zoning Ordinance and the law of the City of Phoenix. During the hearings in this matter, both the Zoning Administrator and the Board of Adjustment determined that the use did not create any adverse impact on the adjacent properties or properties in the area. Further, the City of Phoenix Downtown Code does allow for interim parking lot use in that area as outlined in § 1204(D). Given this, the City of Phoenix Board of Adjustment did not act arbitrarily, capriciously or in an abuse of its discretion.

---

[5]     Section 9-462.06 was amended in 2015, *see* Ariz. Sess. Laws, ch. 125, § 1 (1st Reg. Sess.), but the amendment is not material to our analysis. Throughout this decision, we cite the current version of all statutes unless changes material to our analysis have occurred since the relevant date(s).

[6]     Subsection (H)(1) provides as follows: "A board of adjustment may not . . . [m]ake any changes in the uses permitted in any zoning classification or zoning district, or make any changes in the terms of the zoning ordinance provided the restriction in this paragraph shall not affect the authority to grant variances pursuant to this article." A.R.S. § 9-462.06(H)(1); *accord* PZO § 303(B)(2)(a).

Appellant's argument that the Board of Adjustment's approval must necessarily include a finding that the site plan and build out complies with all zoning requirements goes beyond the scope of what the Board of Adjustment approves. The Board only approves a potential use, not a specific site plan or build out. It is true that the potential use must be permitted by the Zoning Ordinance, and in this case it was under § 1204(D), *but the responsibility to review and approve a site plan as well as the build out fall outside the scope of the Board of Adjustment's use decision*. A proposed site plan and other design factors may be presented and considered by the Board of Adjustment, but this is only in the context of their determination that a use will or will not cause an adverse impact.

(Emphasis added.)

¶9 On April 16, 2015, the superior court entered judgment affirming the grant of the use permit to SLP. We have jurisdiction over Levine's timely appeal pursuant to A.R.S. § 12-2101(A)(1) (2016).

**ANALYSIS**

¶10 Raising several interrelated issues, Levine argues the superior court erred in ruling that the Board's grant of the use permit to SLP was not contrary to law, unreasonable, arbitrary, capricious, or an abuse of discretion.

   I.   *Standard of Review*

¶11 We review *de novo* the interpretation of statutes and ordinances. *See Pingitore v. Town of Cave Creek*, 194 Ariz. 261, 264, ¶ 18, 981 P.2d 129, 132 (App. 1998). When interpreting statutes or ordinances, we give words "their ordinary or plain meaning unless it appears from the context that a special meaning was intended." *Austin Shea (Ariz.) 7th St. & Van Buren, L.L.C. v. City of Phoenix*, 213 Ariz. 385, 391, ¶ 23, 142 P.3d 693, 699 (App. 2006) (citation omitted). At the same time, we afford judicial deference to agencies charged with the responsibility of carrying out specific legislation, and ordinarily give "great weight" to an agency's interpretation of a statute or regulation. *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211, 772 P.2d 33, 34 (App. 1989). Because zoning ordinances are in derogation of common law property rights, we strictly construe them, and resolve any ambiguity or uncertainty in favor of the property owner. *Kubby v. Hammond*, 68 Ariz. 17, 22, 198 P.2d 134, 138 (1948).

**¶12**    In reviewing the Board's decision, we restrict our review to the Board's administrative record. *See Austin Shea*, 213 Ariz. at 392, ¶ 29, 142 P.3d at 700; *Pingitore*, 194 Ariz. at 264, ¶ 21, 981 P.2d at 132 (emphasis added). We will not substitute our judgment for that of the Board, reweigh the evidence, or "consider the probative force of conflicting testimony." *Mueller v. City of Phoenix*, 102 Ariz. 575, 581, 435 P.2d 472, 478 (1967). Instead, we consider the record to determine whether some credible evidence supports the Board's determination; if so, the Board's decision must be affirmed. *See id.* at 581-82, 435 P.2d at 478-79; *Austin Shea*, 213 Ariz. at 392, ¶ 29, 142 P.3d at 700 (citations omitted).

**¶13**    A party attacking a Board decision "is met with the presumption that it is correct and carries the burden" to show otherwise. *Mueller*, 102 Ariz. at 581, 435 P.2d at 478. We will overturn the Board's decision only if the Board acted arbitrarily or capriciously, or abused its discretion. *Pingitore*, 194 Ariz. at 264, ¶ 18, 981 P.2d at 132.

II.    *The Merits*

**¶14**    Under PZO § 202, a "use permit" is defined as "[a]n authorization to *conduct a use or activity* when such authorization is required by this ordinance and when established *according to the procedures in Section 307*." (Emphasis added.) Thus, by the plain language of PZO § 202, the sole procedure for issuing a use permit is governed by PZO § 307.

**¶15**    Within PZO § 307, subparagraphs (A)(7)(a) and (b) provide the criteria for the Zoning Administrator—and on appeal, the Board—to issue a use permit. The Zoning Administrator (and Board) must find:

> that the use[7] covered by the permit, or the manner of conducting the same:[8]

---

[7]    Section 202 of the PZO defines the word "use" as "[t]he *purpose* for which a building, lot, sign, or other structure is arranged, intended, designed, occupied or maintained." (Emphasis added.)

[8]    We note that the phrase "use covered by the permit, or the manner of conducting the same" used in PZO § 307(A)(7) is written in the disjunctive rather than the conjunctive. The PZO's "Rules of Construction and Definitions," found in Chapter 2 of the PZO, provide no guidance as to whether the phrase might be used in the conjunctive. The word "or," as it is commonly used, is a disjunctive particle used to indicate an alternative

> a. Will not cause a significant increase in vehicular or pedestrian traffic in adjacent residential areas; or emit odor, dust, gas, noise, vibration, smoke, heat, or glare at a level exceeding that of ambient conditions; or contribute in a measurable way to the deterioration of the neighborhood or area, or contribute to the downgrading of property values.
>
> b. Will be in compliance with all provisions of this ordinance and the laws of the City of Phoenix.

PZO § 307(A)(7)(a)-(b).

¶16 With respect to PZO § 307(A)(7)(a), the administrative record contains substantial evidence that the Property's "use"—i.e., the *purpose* or *activity to be conducted*—or manner of conducting that use will not adversely affect neighboring properties in any significant or measureable way. *See Mueller*, 102 Ariz. at 581-82, 435 P.2d at 478-79; *Austin Shea*, 213 Ariz. at 392, ¶ 29, 142 P.3d at 700; *Arkules v. Bd. of Adjustment of Paradise Valley*, 151 Ariz. 438, 441, 728 P.2d 657, 660 (App. 1986).

¶17 With respect to PZO § 307(A)(7)(b), the Zoning Administrator and Board must find the Property's use or manner of conducting that use complies "with all provisions of this ordinance and the laws of the City of Phoenix." Under PZO and Downtown Code § 1201(C)(1), for a downtown Phoenix property to "be established, constructed, reconstructed, enlarged, altered, moved or replaced . . . [t]he land use or function must be allowed by the Use Matrix in the Character Area where the site is located." The Use Matrix, set forth in PZO and Downtown Code § 1204(D), provides that interim surface parking is allowed in the City's Warehouse Character Area—an area that encompasses the Property—provided a use permit is obtained. Thus, an interim surface parking lot is a permissible *use* under the PZO and Downtown Code.

---

or to give a choice of one among two or more things. *Boynton v. Anderson*, 205 Ariz. 45, 49 n.2, ¶ 15, 66 P.3d 88, 92 n.2 (App. 2003) (citations omitted). "We will usually interpret 'or' to mean what it says, and we will give it that meaning unless impossible or absurd consequences will result." *Id.* (quoting *State v. Pinto*, 179 Ariz. 593, 595, 880 P.2d 1139, 1141 (App. 1994)). We further note that Chapter 2 of the PZO does not define the words "manner," "conducting," and "compliance" used in PZO § 307(A)(7)(a) and (b).

¶18 Levine acknowledges that PZO § 1204(D) "allows for surface parking as an interim use," but argues that SLP is nonetheless required to comply with the City's design standards with regard to setbacks, landscaping, alternative paving materials, etc. Even assuming without deciding that Levine is correct that SLP's site plan does not comply with the design standards of the Downtown Code,[9] none of these issues were or could have been decided by the Board, whose only decision was whether SLP could have a parking lot (i.e., the use), not what the parking lot looks like (i.e., the design). Section 307(A)(7)(b) expressly limits the compliance requirement to whether the proposed *use* of the Property complies with the PZO.[10] Under the plain terms of PZO § 202, a "use" is defined solely as the "purpose" of the property—in this case, an interim surface parking lot. PZO § 202 does not define "use" to encompass setback requirements, landscaping, the design or buildout of a property, etc. Therefore, we reject Levine's attempt to expand the PZO § 307(A)(7)(b) criteria to also require a Board determination of compliance with PZO design standards. The Board properly limited its decision to whether the Property's use—operation of an interim surface parking lot—complied with the PZO.

¶19 Levine suggests the Board should have approved SLP's site plan,[11] the Board should have determined which design standards applied

---

[9] In its answering brief and at oral argument, SLP has disputed Levine's claims that SLP has acknowledged the interim parking lot does not comply with the PZO. We need not and do not decide this question.

[10] According to the City, its staff has consistently interpreted § 1204 as allowing an "interim use to proceed upon issuance of a use permit even if the particular design elements may not perfectly fit the other strictures of the Downtown Code." As we have recognized, this interpretation is ordinarily entitled to great weight. *See Circle K Corp. v. City of Mesa*, 166 Ariz. 464, 468, 803 P.2d 457, 461 (App. 1990) (citation omitted); *U.S. Parking*, 160 Ariz. at 211, 772 P.2d at 34.

[11] Levine argues (in his briefs and at oral argument before this court) that the Board approved the site plan, but the record, including the transcript of the September 12, 2013 public Board hearing, does not support his characterization of the Board's decision. Although the proposed site plan was placed before the Board to allow the Board's assessment of the proposed use, the issue of site plan approval was never before the Board. We therefore agree with the superior court that the Board did not formally approve the site plan at the September 2013 hearing; instead, the Board

to the Property, and SLP should have sought a variance. These questions, however, were not before the Board and are not properly before this court. Instead, the sole decision properly before the Board was whether to uphold the Zoning Administrator's approval of the use permit to operate an interim surface parking lot. *See* A.R.S. § 9-462.06(C) ("A board of adjustment shall hear and decide appeals from the decisions of the zoning administrator."); PZO § 303(B)(1)(b) ("The Board of Adjustment shall have the authority to . . . [h]ear and decide appeals from . . . the issuance of use permits . . . ."); PZO § 303(C)(1) (allowing for "[a]ppeals from an order, requirement, or decision made by the Zoning Administrator"); *see also* A.R.S. § 9-462.06(K) (stating that a person aggrieved by a decision of the Board may file a complaint for special action in the superior court to review the Board's decision); PZO § 303(C)(4) (same). The plain language of A.R.S. § 9-462.06(C) and (K) and PZO § 303(B)(1)(b) and (C)(1) and (4) limits our review to the "decision" before the Board. The Board's decision was not whether SLP's preliminary site plan would comply, which zoning design standards would apply given the interim use, or whether a variance would be necessary for the preliminary site plan; instead, the sole issue presented to and decided by the Board was whether to uphold approval of the use permit pursuant to the criteria identified in PZO § 307(A)(7)(a) and (b).

¶20　　　　Furthermore, requiring the Board to find that the preliminary site plan and buildout comply with all zoning requirements would usurp the authority of the City's Planning & Development Department. Under PZO § 1201(C)(2), for properties subject to the Downtown Code, "[d]evelopment review approval must be obtained in accordance with Section 507 of the Phoenix Zoning Ordinance." Section 507 sets forth an integrated city-wide development review procedure, which requires approval by the Planning & Development Department of preliminary and final plans to ensure compliance with technical standards of the Phoenix City Code and the PZO.[12] *See generally* PZO § 507(A)(1), (F), (I); *see also*

─────────────

simply upheld the Zoning Administrator's decision to approve the use permit.

[12]　　In its answering brief, the City states SLP "long ago went through the City's design review process (again, a process conducted separate and apart from the Board of Adjustment), yet Levine has never challenged the City's approval by special action or otherwise." Other than to argue the Board approved the site plan at its September 2013 hearing, Levine does not dispute these representations in his reply brief, or SLP's representation at oral argument that the site plan was separately approved.

9

A.R.S. § 9-462.05(D) (2008) (requiring the legislative body of a municipality to establish rules and procedures for review and approval of site plans). The design review process is therefore distinct from the use permit issued by the Board.[13]

**¶21**       Moreover, neither A.R.S. § 9-462.06(H)(1) nor its corollary, PZO § 303(B)(2)(a), prevents the City from granting a use permit if a site plan fails to comply with the PZO. Instead, the plain language of A.R.S. § 9-462.06(H)(1) and PZO § 303(B)(2)(a) prohibits the Board from issuing a use variance or amending the PZO.[14] *See, e.g., Lane v. City of Phoenix*, 169

---

[13]       The City's use permit application form and variance/use permit guidelines appear to be in accord by providing notice that approval of a request for a use permit "does not replace the need for acquiring the appropriate building permits, site plan approval," and other licenses. Additionally, the City's variance/use permit guidelines provide that inclusion of a site plan sketch with a variance/use permit application to the Zoning Administrator/Board is merely "used by the Planning and Development Department Information Services Section to draft finished maps for the public hearing."

[14]       The phrase "may not . . . [m]ake any changes in the uses permitted in any zoning classification or zoning district" in A.R.S. § 9-462.06(H)(1) and PZO § 303(B)(2)(a) means that the Board may not issue a use variance. *See Ivancovich v. City of Tucson Bd. of Adjustment*, 22 Ariz. App. 530, 536, 529 P.2d 242, 248 (1974) ("A 'use' variance is one which permits a use of land other than that allowed by the zoning ordinance."); 2 Patricia E. Salkin, *American Law of Zoning* § 13:9 (5th ed. 2016) ("[U]se variances . . . allow the establishment of property uses that would otherwise be prohibited in the zoning district . . . .").

Also, the phrase "may not . . . make any changes in the terms of the zoning ordinance" in A.R.S. § 9-462.06(H)(1) and PZO § 303(B)(2)(a) means that the Board may not amend the municipal zoning ordinance. *See* 4 *American Law of Zoning* § 40:2 ("The powers of a board of appeals are adjudicatory, not legislative. It does not have power to amend the zoning ordinance." (footnotes omitted)); *see also Arnel Dev. Co. v. City of Costa Mesa*, 620 P.2d 565, 570 (Cal. 1980) (recognizing that the issuance of use permits is adjudicative and zoning amendments are legislative); *State ex rel. Nealy v. Cole*, 442 S.W.2d 128, 131 (Mo. Ct. App. 1969) ("The Board has no legislative power. It cannot amend, modify or change the Zoning Ordinance." (citations omitted)). The power to amend the PZO is a legislative act

Ariz. 37, 41, 816 P.2d 934, 938 (App. 1991) ("[A] board of adjustment has no legislative authority and acts solely in a quasi-judicial capacity in exercising its zoning enforcement duties." (citation omitted)); *see also Ivancovich*, 22 Ariz. App. at 535, 529 P.2d at 247 (stating that the City of Tucson Board of Adjustment lacked authority to "amend or repeal any zoning ordinance for this power belongs to the City Council"). In this case, the Board neither issued a use variance nor amended the PZO, and A.R.S. § 9-462.06(H)(1) and PZO § 303(B)(2)(a) do not extend the Board's use permit obligations to that of confirming that a site plan meets all PZO design standards. Those responsibilities rest with the City Planning & Development Department, not with the Board.

### III. Costs and Attorneys' Fees

¶22 Citing A.R.S. §§ 12-341 (2016), 12-2030 (2016), and 12-348 (2016), respectively, Levine requests costs and attorneys' fees on appeal.[15] Levine is not the prevailing party, however, and we deny his request. Pursuant to A.R.S. § 12-341, we award costs to SLP and the City upon compliance with Rule 21, ARCAP.

### CONCLUSION

¶23 The superior court's judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

reserved to the City Council. *See* Phoenix City Charter, ch. IV, § 2(67); PZO § 506(A).

---

[15] Section 12-2030 does not authorize an award of attorneys' fees for an appeal of a board of adjustment's decision under A.R.S. § 9-462.06(K). *See Stagecoach Trails MHC, L.L.C. v. City of Benson*, 231 Ariz. 366, 370, ¶ 20, 295 P.3d 943, 947 (2013). Section 12-348(A)(4) provides for an award of attorneys' fees to a party who prevails in a special action proceeding against the state or other governmental entity, but not against a non-governmental entity, such as SLP. *See MVC Constr., Inc. v. Treadway*, 182 Ariz. 615, 620–21, 898 P.2d 993, 998–99 (App. 1995).